NOTICE

Decision filed 03/07/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220153-U

NO. 5-22-0153

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 18-CF-1239 |
| | ) | |
| TOTI TATU-COMMIS, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the circuit court reasonably credited the testimony of State witnesses contradicting defendant's contrary version, the court did not err in dismissing his postconviction petition. As any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2    Defendant, Toti Tatu-Commis, appeals the circuit court's order denying, following a third-stage hearing, his postconviction petition. Defendant's appointed appellate counsel, the Office of the State Appellate Defender (OSAD), concludes that no reasonably meritorious argument exists that the court erred. It has filed a motion to withdraw as counsel together with a supporting memorandum (see *Pennsylvania v. Finley*, 481 U.S. 551 (1987)). Counsel notified defendant of its motion and this court provided him with an opportunity to file a response, but he has not done so. After reviewing the record and considering OSAD's motion and supporting memorandum, we

1

agree that this appeal presents no reasonably meritorious issues. Accordingly, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4    Defendant pleaded guilty to criminal sexual assault in exchange for a 12-year prison sentence. During the proceedings, defense counsel told the court that he informed defendant that "he will almost certainly be deported at the end of his sentence."

¶ 5    Defendant did not move to withdraw the plea. Instead, in 2020, he filed a *pro se* postconviction petition in which he alleged that his then-wife, Julie Amba, convinced the victim, S.C., who lived with them, to falsely accuse defendant. He further alleged that the court-appointed translator had a conflict of interest and incorrectly translated statements made by defense counsel and the judge. The petition also alleged that Amba convinced their pastor, Bienvenu Lugano, to state falsely that defendant confessed to him. Defendant claimed that Lugano knew that defendant had a video of Amba beating S.C. and was angry with defendant for refusing to delete it.

¶ 6    The court appointed counsel who filed an amended petition. The matter proceeded to an evidentiary hearing at which a different translator was used. There, defendant testified as follows. The interpreter for the plea proceedings, Jeanine Bumba, was the godmother of Amba's cousin. Before he pled guilty, his original counsel, accompanied by Bumba, visited him in jail. Bumba told him that counsel had said that if he did not plead guilty he would be sentenced to life in prison. Counsel did not explain to him that he could choose to go to trial. On the day of the plea, he resisted pleading guilty, but Bumba told him that counsel had said his life would be "sacrificed" if he did not plead guilty.

¶ 7    In February 2019, Amba visited him in prison. She said that she had manipulated S.C. into falsely accusing him because he had once recorded Amba beating S.C. She also referred to an

2

incident in 2005 involving Amba's family when they lived in Africa. In 2018, after he was arrested, defendant gave Amba control of his finances and asked her to hire a specific private attorney. However, Amba did not do so. Had defendant known what Amba had done, he would not have pled guilty.

¶ 8     The State called Amba and S.C. S.C. testified that she had lived with defendant and Amba. She said that defendant had indeed molested her. When she was 15, she reported defendant's behavior to school personnel, leading to defendant's arrest.

¶ 9     Both witnesses denied that Amba had manipulated S.C. to falsely accuse defendant. They denied that Amba had ever beaten S.C., much less that defendant had a video of it. S.C. described one incident where defendant and Amba were arguing. When S.C. came near them, Amba ripped S.C.'s clothing but did not hurt her. Defendant was beating Amba during the incident and S.C. thought he may have recorded the incident.

¶ 10    Amba testified that she knew Bumba but they were not close. She explained that she did not hire defendant's preferred attorney because she did not have enough money to do so after paying the family's other expenses.

¶ 11    Bumba testified that she had no relationship with Amba and was not a godmother of her cousin. Bumba had met Amba in court prior to this case because Amba had accused defendant of domestic battery.

¶ 12    Bumba testified she was professional and would not change her testimony to benefit Amba or S.C. or to hurt defendant. She and defense counsel went to the jail several times prior to defendant's plea. Defendant repeatedly denied the charges against him until their final visit, where he began crying, saying that he had spoken with his pastor. Defendant asked counsel what he should do. Counsel advised defendant that if he had committed the offense, he should plead guilty

3

because he would likely receive a lower sentence, but he was not forcing him to do so and that he could go to trial if he wanted.

¶ 13    Bumba remembered that counsel explained to defendant the difference between a bench trial and a jury trial and that defendant appeared to understand. Counsel also told defendant about the immigration consequences of pleading guilty. Bumba did not tell defendant that counsel had spoken to the judge or the judge said he would sentence defendant to life in prison.

¶ 14    Lugano testified that defendant came to him in September 2017 and confessed to sexually assaulting S.C. Lugano did not initially report this information to the authorities but came forward after consulting with his superiors in the church.

¶ 15    Following the hearing, the court said that it would ask the new interpreter to listen to the plea proceedings to ensure that they were properly translated. The interpreter subsequently concluded that the proceedings had indeed been properly translated.

¶ 16    The circuit court dismissed the petition. The court found that defendant was not credible while Amba and S.C. were credible. The court further found that the evidence did not establish that the translator at the plea misinterpreted the proceedings. Finally, the court concluded that Amba did not hire the attorney defendant wanted because she lacked funds to do so. Defendant timely appeals.

¶ 17                                ANALYSIS

¶ 18    OSAD concludes that it can make no good-faith argument that the circuit court erred by denying defendant's petition. OSAD separately discusses each of the claims in the petition, but the overarching theme is that S.C., Amba, Bumba, and Lugano contradicted defendant's testimony on all key points. The trial court, as fact finder, reasonably credited their testimony over defendant's contrary version. We agree.

4

¶ 19    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a mechanism by which a criminal defendant may assert that his conviction resulted from a substantial denial of his constitutional rights. *Id.* § 122-1(a); *People v. Delton*, 227 Ill. 2d 247, 253 (2008). The Act establishes a three-stage process to adjudicate a postconviction petition. *People v. English*, 2013 IL 112890, ¶ 23. If a petition is not summarily dismissed at the first stage, it advances to the second stage, where an indigent petitioner can obtain appointed counsel and the State can move to dismiss the petition. 725 ILCS 5/122-2.1(b), 122-4, 122-5 (West 2020).

¶ 20    If a defendant makes a substantial showing of a constitutional violation, the petition advances to the third stage, where the trial court conducts an evidentiary hearing. *Id.* § 122-6. At this stage, the defendant has the burden to prove a substantial constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). At such a hearing, the circuit court serves as the fact finder, and, therefore, it is the court's function to determine witness credibility, decide the weight to be given their testimony, and resolve any evidentiary conflicts. *People v. Domagala*, 2013 IL 113688, ¶ 34.

¶ 21    Defendant's principal contention was that Amba, angry that defendant had recorded a video of her beating S.C., had manipulated the latter into falsely accusing defendant. However, both categorically denied this, and S.C. specifically confirmed that defendant had molested her. Amba and S.C. both denied that Amba had ever beaten S.C. or that defendant had a video of an incident between the two. Lugano and Bumba also categorically denied their roles in the alleged scheme.

¶ 22    That Amba would manipulate defendant's niece to accuse him of a particularly heinous crime due to a petty dispute about a cell phone video and an unspecified incident more than a decade earlier, and that defendant's pastor and the court-appointed interpreter would also participate for reasons of their own, seems farfetched. Certainly, we cannot say that the circuit

court's decision refusing to credit defendant's testimony in the face of denials by all four of the alleged schemers was against the manifest weight of the evidence.

¶ 23    Defendant also alleged that he was not informed that he would likely be deported after serving his sentence. The sixth amendment requires counsel to provide a criminal defendant advice about the risk of deportation arising from a guilty plea in order to provide effective assistance of counsel. *Padilla v. Kentucky*, 559 U.S. 356, 374 (2010). Here, defense counsel told the court during the plea proceedings that he had informed defendant that he would almost certainly be deported as a result of his conviction. Moreover, Bumba testified that she remembered counsel telling defendant that he would be deported after serving his sentence. Thus, the court did not err in dismissing this claim.

¶ 24    In his petition, defendant contended that his plea was involuntary because the interpreter misinterpreted the proceedings. However, Bumba denied this. Moreover, the newly appointed interpreter reviewed the proceedings and concluded that they were translated correctly. Thus, the circuit court did not err in dismissing this claim.

¶ 25    Defendant also alleged that plea counsel was ineffective for not informing him he had a right to trial and that Bumba told him that counsel had spoken to the judge, who said that he would sentence defendant to life in prison if he did not plead guilty.

¶ 26    Defendant failed to establish that counsel was ineffective. Bumba testified that counsel told defendant the difference between a bench trial and a jury trial, and he appeared to understand. She denied telling defendant that defense counsel said he had spoken privately to the judge. The court found Bumba credible and found defendant's contrary testimony incredible.

¶ 27    There is no viable claim that defendant was denied counsel of his choice. The court credited Amba's testimony that she did not hire defendant's preferred attorney because she lacked

6

funds to do so. Based on its reasonable credibility decisions, the court did not err in dismissing these claims.

¶ 28    Finally, OSAD contends that there is no good-faith contention that postconviction counsel provided unreasonable assistance. The right to counsel in a postconviction proceeding emanates from the Act rather than from the constitution. *People v. Owens*, 139 Ill. 2d 351, 364 (1990). Thus, postconviction petitioners are guaranteed only the level of assistance that the Act provides, which is a reasonable level. *People v. Flores*, 153 Ill. 2d 264, 276 (1992). One aspect of reasonable assistance is compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). See *People v. Carter*, 223 Ill. App. 3d 957, 961 (1992). Per that rule, counsel must show that he or she (1) consulted with the petitioner to ascertain his or her contentions of constitutional violations, (2) examined the trial record, and (3) made any amendments to the *pro se* petition necessary to adequately present the petitioner's claims. Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 29    There are two ways for counsel to demonstrate compliance with Rule 651(c). *People v. Richmond*, 188 Ill. 2d 376, 380 (1999). Counsel may file a certificate that he complied, or the record as a whole may demonstrate counsel's compliance. *Id.*

¶ 30    Where counsel files a Rule 651(c) certificate, there is a presumption that counsel provided reasonable assistance. *People v. Custer*, 2019 IL 123339, ¶ 32. If the presumption is triggered, the defendant has the burden of overcoming the presumption. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. If counsel failed to comply with Rule 651(c), the defendant is not required to show that his claims had merit (*People v. Suarez*, 224 Ill. 2d 37, 47 (2007)) or that he otherwise suffered prejudice from the lack of compliance (*People v. Nitz*, 2011 IL App (2d) 100031, ¶ 18). Nor is counsel's lack of compliance subject to harmless-error analysis. *Suarez*, 224 Ill. 2d at 52.

7

¶ 31    Here, the record shows that counsel filed a Rule 651(c) certificate when she filed the amended petition.   Although the original certificate stated that counsel had examined the proceedings from "trial," counsel told the court that the use of the word "trial" was a scrivener's error.  She then filed an amended certificate stating that she examined the proceedings from the "plea."  The record demonstrates that counsel filed an amended petition, examined witnesses at the third-stage hearing, and argued on defendant's behalf.  Accordingly, there is no basis on which to argue that counsel provided unreasonable assistance or otherwise failed to comply with Rule 651(c).

¶ 32                                          CONCLUSION

¶ 33    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.


¶ 34    Motion granted; judgment affirmed.